oral argument not to exceed 15 minutes per side. Mr. McKazick for the Plaintiff Appellant. Thank you. Good morning, Your Honors. I'll be reserving 5 minutes for rebuttal time. Alright. Your Honors, Thompson McKazick on behalf of the Plaintiff Appellant here. Plaintiff's appealing a district court decision out of the Eastern District in regards to an excessive force claim. The judge granted defendant's motion for summary disposition pursuant to Rule 56 and we're asking this court to reverse that decision. The reason for that being that when the facts taken in light most fair rule 2, the Appellant, I think the video evidence as well as the testimony through the deposition show that in fact there was excessive force and that the determination should be reversed. So what we have here are two young black males driving on 8 Mile, which is the dividing line between Detroit and the suburbs. And they're in the City of Warren between the area of Grosbeck and Hoover Road. As they're driving they're pulled over for some alleged traffic violations. Mr. Laury, the Plaintiff in this case, complies with all the officer's commands. They enter into a dialogue. He doesn't understand why he's being pulled over. Nonetheless, he's patted down and a drug is found on him, an ecstasy pill. His passenger was also on drugs. But there were two officers at the scene, one of those officers being Officer Price. Once the ecstasy pill is found, they're transferred over to the Warren Police Department booking station. They're transferred without incident. There's some dialogue going between the officers, but transferred without incident. They get to this booking room, which is kind of where this video takes place and everything happens. So they're in this booking room. They're told to sit down. Mr. Laury sits down. He obeys the commands, but he doesn't understand why he was being pulled over. He feels that he's being racially profiled. The officer, after about ten minutes, removes Mr. Laury's cuffs. And as he does that, he tells them to take off his jacket and to give it to him. So Mr. Laury stands up, removes his coat, and tosses it to the officer. And it's at that minute, at that exact time, Officer Price lunges at Mr. Laury and attacks him. Puts him in a chokehold, throws him on the bench. Didn't all this happen after there was a lot of back and forth and argument between your client and the officers, and discord as to whether he was going to obey the commands in the station, and his complaints about the handcuffs and being too tight, and just a lot of conflict between everybody involved? Judge Clay, that's exactly correct. There was a dialogue going between the two of them. There's nothing wrong with questioning why you're being pulled over. There's nothing indicative that he was threatening the officer, or going to physically harm this officer. Well, he did make the comment, like, you're a tough guy when I'm in the cuffs. That's exactly it. But that's not a threat. I don't think that can be viewed as a threat. And I think that goes to show Officer Price was antagonizing Officer Price was antagonizing Mr. Laury, because what does he do? If he felt threatened during that time, he would not have removed those handcuffs. And I think that's a jury determination as well, to decide, did he feel threatened? Because he takes off these handcuffs. I think that's very important. I don't know how well pointed out that was in the brief, but it's very important. If you feel threatened, you don't take off those handcuffs on a defendant. Furthermore, he's inside a booking room in a police department. There's no risk of flight or him going anywhere. So when he releases those cuffs, he was looking for a reason to attack Mr. Laury. And he does that by saying, hand me your coat. And when he tosses him the coat, at that time, he says, I don't like the way you did that. I'm coming after you. I'm going to show you how tough I am. And so that kind of goes into whether or not he actually, there was a physical assault imminent here. And there wasn't. He was obeying commands. Essentially what the city wants us to believe is that if you obey a command, we can attack you. If we don't like the way you did it. And so we go into that and we have to remember that even though there's a dialogue going on, there's no threat. I'm going to beat you up. As soon as I get out of these cuffs, I'm taking you out. It's saying you're tough when I'm in these cuffs. And that's not a threat. Furthermore, we've got to look at the severity of the crime. Why were they arrested? They were arrested for essentially, they were pulled over for a traffic violation. For changing lanes, quote unquote, erratically. He had possession of one ecstasy pill on him. Not to say that they're not serious, but there's no violence there. There's no armed and dangerous. There's nothing that an officer would have to put an extra guard up on. And to say that he was going to assault or maybe flee, once again, he's, Mr. Lorry is in a booking room in a police department. He's not going anywhere. There's other officers around. So by the mere tossing of a coat to the officer as he instructed, I don't believe a jury could find that the force used was justified. And that's the thing too. It's reclaiming excessive force. It's not to say that the officer at that point couldn't tell him to turn around and cuff him again. It's not to say he couldn't grab his arm. It's the force that he used that wasn't reasonable. He attacked him. We get into Officer Rodriguez a little bit. She comes into the room a little bit later. While Officer Price is attacking Mr. Lorry, is throwing him on the ground, Defendant Rodriguez comes in and essentially from the video, it looks like he's kneeling on either the back of his neck or his head. I think a jury could determine that there was actually no resisting going on by Mr. Lorry. In the case law it's pretty clear that you can't use gratuitous force on a defendant that's not resisting. We get into Defendant Campbell as well a little bit. Defendant Campbell comes into the video a little late and at that time he should have determined when he sees what's going on that Mr. Lorry is being handcuffed. At that point he should have stepped in and said get off his head and then we had the ripping of an earring out of Mr. Lorry's ear. There's no excuse for that. There's no reason for that. Then they further go on and put him in the restraint chair after he wasn't actively resisting and after he's cuffed and obeying commands I believe that when everything's taken like most fair will to plaintiff as it should have been the court should have not granted that motion for summary disposition and should have let a jury determine their credibility and the believability of the testimony. The beautiful thing is we don't always have video evidence of things and here we do. I don't know if the court's had an opportunity yet to view that video or not but when we do please review it carefully because there's no there's nothing I see in there and there's nothing in there that shows a physical gesture, physical aggressiveness towards this officer. It's merely the following of a command, tossing a coat and then being attacked. The officer wants to claim maybe that his vision was obstructed and he thought he was fleeing or in the face of an imminent assault but the video shows quite the opposite. The video shows him obeying the command, tossing the coat and sitting back down in the bench as he's instructed to do which is to sit in that chair. So I believe that when you take all of that and look at it like most fair will to Mr. Lowery I believe that the district court's decision should be reversed and it should be sent back down to the trial court. You don't have a separate claim on handcuffs right? I was a little unclear about. Sure, in regards to the handcuffs Mr. I apologize if I cut you off. Mr. Lowery was complaining about the handcuffs but looking through the pleadings on that it was in there but I don't believe it was pleaded with its own separate claim but it was in there so with that being said we'd ask that the court look at it but the main chunk of this claim is in regards to Officer Price, Officer Rodriguez, Defendant Campbell and their use of excessive force. What did Defendant Hoffman do wrong? It looks like he left before the booking. That is correct and Defendant Hoffman was there when the gentlemen were arrested Price and Campbell, patted them down but I don't believe that when you look at it he was one in a chain of people that kind of handled the situation or should have handled it differently. Well there's no specific allegation of any wrongdoing against Hoffman that I can see unless I'm overlooking something that's why I'm asking. Seems like perhaps he shouldn't be in the case. Defendant Hoffman did, I believe he did leave off the elevator as they were going up but the concern mainly is with this Defendant Price, Defendant Rodriguez, Defendant Campbell. Alright. Thank you. And then the chair, do you have a separate claim about putting in the restraints? In regards to the restraint chair, I don't believe there was, when it was applied I don't believe it was in there, it was brought up at the motion for summary disposition and just to be, he was already restrained so the argument is that there was no need to put him in that chair for several hours. Yes. Thank you. Thank you. Good morning. Good morning your honors. Rachel Badalamenti on behalf of the appellee. Appellee is plural. I will respond to the arguments that were made. We've briefed it extensively so I am not going to go through the facts unless the court has questions. The first point I'd like to make is with respect to the appellant's claim that Mr. Lowery was transferred without incident. He indicated that there was a dialogue but there was not an incident. And I think Judge Clay pointed it out perfectly that the dialogue that went on was not merely why am I being arrested as counsel suggests here today. It was a threatening aggressive and it's all recorded on a dash cam that is part of the record here. And so you have a sort of Mr. Lowery was deposed in the case and he admitted the use of curse words with respect to the officers. He accused them of racial profiling using explicatives. And you're correct that once they get to the jail the aggression, once they exit that big bus elevator and Officer Huffman gets out, it's just Officer Price then in the booking area. And it's at that point that Mr. Lowery becomes even more aggressive. He becomes even more agitated. And again you don't have to look at the video and you don't have to look at what the defendant said. Mr. Lowery admits and his co-arrestee Mr. Campbell both admit that once they entered that booking area floor Mr. Lowery took a firm stance. He was running his mouth. He was cursing at the officers. He was very aggressive. In fact another point that counsel made today is that after 10 minutes the handcuffs were removed. And he says if Officer Price felt threatened he shouldn't have removed those handcuffs. The same argument was made in the trial court and the trial judge noted well I guess no good deed goes unpunished. But the reality is and it's important after two minutes Officer Price was ready to process and fingerprint Mr. Lowery. He does not do so. Mr. Lowery testified to this fact and Officer Price testified to the fact and the video shows. He attempts to remove the handcuffs. Mr. Lowery turns into him. He is cursing again and he waits. He waits another 10 minutes until Mr. Lowery calms down. He goes back through the property. He discusses things with him. When Mr. Lowery is calm then, then he decides to remove the handcuffs. The officer asks Mr. Lowery to take off his jacket and hand it to him. And he does exactly that. That is either a misrepresentation or an error of what's actually in the record. Mr. Lowery testified that he was told to stay seated. He was told to sit down on the bench, stay seated on the bench, take off your jacket and hand it to me. And what he did instead and this is important, is he stood up, he takes off his jacket and he throws it at the officer's head. That is reasonably understood by Officer Price who is alone with these two men, one restrained, one now unrestrained and standing against commands. That is reasonably understood as an act of aggression. I want to point out that it's not just that it's reasonably understood, that small thing, but that we have all of the aggression before that I've already talked about. And in addition to that, we have this jump rope like action where Mr. Lowery is trying to move his handcuffs to the front of his body. Officer Price, he doesn't know if he's trying to get free, trying to be able to manipulate his hands so that he can assault him. He's not sure what he's trying to do. But Mr. Lowery admits he tried a jump rope like action to get the handcuffs around to the front of his body. Wasn't he told not to do that and upon being commanded to stop he did stop? So that really isn't in the picture here. Well, that's what happens at the two minute marker. That's the reason why the handcuffs don't come off is he's told to stop, he's told not to do that, he's told to sit down on the bench and he becomes compliant which is why the booking process moves forward. But all of that aggression, it doesn't just get dismissed because an officer can reasonably take account of the full circumstances and all of his interaction with this particular arrestee when he makes the internal analysis, the reasonably objective internal analysis on whether or not this individual is assaulting him or could assault him if he's not taken to the ground and re-handcuffed. And so that jump rope like action should be taken account of at this point. He was guilty of provocation, but he didn't make any assaultive aggressive actions that would constitute an assault, did he? For example, what possible justification could there have been for ripping the earring out of the man's ear? So Mr. Lowery's testimony is that when he stood up he thought that his earring was ripped out of his ear. His testimony is not that someone actually took their hand or their foot and ripped his earring. So in other words, through the course of the takedown or the struggle to get him re-handcuffed, his earring is pulled out. There's no striking. It's undisputed in the case. Mr. Lowery admits nobody struck him, nobody punched him, nobody kicked him. There was none of that. Nobody ripped out his earring. His earring came out during the course of the takedown. And so there's a distinction. The problem is that's contested, and on summary judgment we have to take things, the allegations in favor of the plaintiffs, don't we? Yes, you do. But it's not contested. What is contested, and that's the distinction, and we've cited a number of cases in our brief, and actually I have a number more. And the distinction between the cases where there is force, and the question is whether or not that use of force is reasonable, the cases where you are presented with a question of fact is either because there's an issue of gratuitous force, there's striking, the officer goes beyond what is necessary to subdue the suspect. Alternatively, there are cases where the plaintiff denies that they did anything wrong. For example, in the Muldrew case, there is a plaintiff who is supposedly turned in towards the officer, tries to rip away and rip free from the handcuffs, and that's what the officer says, and that's why she's taken to the ground. Plaintiff, though, says, I didn't do anything. I was walking out, I was calm, cool, and collected. I cooperated with all commands. That creates a question of fact. Another example of that would be the Howard case. And I would note, Judges Clay and White were joined, either wrote the opinion or concurred on the opinion, and in that case, the assertion is that the plaintiff was choked in the course of his arrest, and he denied that he did anything to prompt the officer to use any type of force. Well, I mean, you're putting a gloss on what happened. If you watch the video, that's not necessarily what one sees. I mean, yeah, there was a time when he tried to get his hands in front of him. That's all it was, and he was told not to, and he put them back, and he sat down. And he's sitting there. He gets up. He's instructed to get up. He's got a hand up here and a hand there. I mean, you do see him tossing the jacket. I mean, he's tossing it over. The guy gets it, and even then, I mean, he takes him down. He's down for a long time. Other people come and help. You don't see him struggling at all. There's no indication that he's struggling or giving them any kind of a hard time, and yet he's down there for an extensive period of time with a knee on his head and all the rest of it. So, I mean, and he testifies that he's not struggling. So there's a struggle that you're assuming that he denies and that's not visible. So let me back up to a couple of things that you said. The first is that he's sitting on the bench, and he stands up, and he's asked to stand up, and he's got one hand here and one hand here. That, with all due respect, the plaintiff testified is not true. The plaintiff testified he was instructed to stay seated. Do not get off the bench. You are unhandcuffed. Do not get off the bench. Officer Price testified he was instructed to stay seated. Do not get off the bench. And instead, what he did is he stands up, and he does not hand his jacket. He throws it at him. And it's not that he tossed it to the officer. It's that he threw it at his head, and it, in fact, does cover his head. Well, you want to characterize it that way. I also looked at the video, and I would not call that tossing. I would not call that throwing at someone's head. Mr. Lowry, however, testified that what he did is he flinged it. That was his word. Flinged it at the officer's head. Not he flinged it at him. Not he flinged it to him. That he flinged it at his head. And so it was his intention. And I think that that's very, very relevant. At this point, he is flinging his jacket. He's not tossing it to him. He's not handing it to him as instructed. He's not sitting as instructed. The question then is, does Officer Price, taking the totality of this individual's conduct up to this point, does he reasonably believe either that an assault has occurred or that an assault is imminent? And what the trial court held is not that he didn't have to get to the question of whether or not an assault occurred. That it was reasonable for Officer Price, at that point, to believe that if he did not subdue Mr. Lowry, that an assault would occur. And that was based on the threats that had happened, the blatant disregard for the fact that he was told to sit down and instead stood up and tried to jump rope out of his handcuffs. That he's told to sit down and hand his jacket over and he doesn't do that. That he's yelling, cursing while in the booking room. That the co-arrestee is sitting there and laughing and antagonizing him. And also, very, very important, and we cite the Martin case for this, is that Officer Price is entitled to consider the fact that there is both alcohol and ecstasy at play here. And so he has a reasonable understanding and belief, and it is wholly, objectively reasonable for him to take account of the fact that this individual is on the type of drug that can cause erratic behavior. And he understands that possibly alcohol is... What evidence was there of that? That's not something in the record that you're talking about now, is it? Oh, yes. That he was high on drugs and high on alcohol and all this? Yes, it absolutely is. What is in the record about that? Mr. Campbell, the co-arrestee, gets out of the vehicle. Mr. Campbell tells the officer that everybody in the car had been drinking, including Mr. Lowry. In fact, that's why Mr. Lowry is asked about whether or not he's used alcohol in the rear dash cam video. Mr. Lowry denies being intoxicated. Of course, he was the driver of the vehicle. But when Mr. Campbell points to the rear of the vehicle, there's a red Solo cup. They now say that that red Solo cup didn't have any alcohol in it. But at the time, Mr. Campbell admits in his testimony, yes, I told the officers that alcohol was involved that evening. In addition, Mr. Campbell tells the individuals that they were all at a house with these young girls prior to being stopped by the police, and that he himself is under the influence of more ecstasy than he had ever taken in his life. That's what he says at the scene during the arrest to Officer Price. In addition to that, Mr. Lowry, though he denies having taken any, is found with an ecstasy pill in his pocket. And so the idea that drugs or alcohol shouldn't be a factor in what Officer Price can take account of is just misplaced. He's entitled to consider the fact that erratic behavior or quick mood changes, that those are the types of things that can occur with these two individuals. Mr. Campbell, for example, has the giggles. And he goes from having the giggles to screaming to incite Mr. Lowry to fight the officers to going back to having the giggles. And so they're actually observing at least one of them in this erratic behavior who's acknowledged all these facts. And I would also note that the plaintiff's brief touches on, and the plaintiff even testified today, or talked about it today, that there's the ecstasy pill found in his pocket. Mr. Lowry's ecstasy pill is found in his pocket. Mr. Campbell testified once the cases are filed in his deposition. Actually, that was my ecstasy pill. But at the time at the scene, it was found in Mr. Lowry's person, and Mr. Campbell certainly didn't take responsibility for it at that point. And so it is at least reasonable for Officer Price to take account of the fact that drugs or alcohol are involved with respect to this arrest. And that goes into the severity of the crime factor under Graham, that they're entitled to take account of all the circumstances. I mean, this is an objective factor. So what you're in it, you are, as I understand it, relying on, because words alone can't justify force. Right. So you're relying on the jacket. Right. So the force that's used is a takedown. And so there are a number of cases that recognize when a takedown by force is appropriate. In some cases, the arrestee merely turns in towards someone, and oftentimes those types of videos create a question of fact. When that turning in or, you know, move of aggression as viewed by the officer is accompanied, though, by prior threats, by prior aggression, use of curse words, any attempt, you know, to manipulate handcuffs. When that occurs, and that occurred in this case not because I say it occurred, but because the plaintiff's own testimony. I mean, he testified to the things that he said to these officers. It's on dash cam video. It's on the rear cam video. The distinction between this case and the cases where there's a reasonable question of fact or genuine question of fact is that in this case, the plaintiff admits what he did that led up to his takedown. So you're relying on the jacket and what the atmosphere before, but in terms of any physical activity, it's the jacket. Right. That would be the turn into or the action that, you know, leads the officer to believe that now the plaintiff is going to make good on his prior threats. So then they take him down. Right. He's down there for a long time with increasing force being used on him, and there's no indication that there's any type of resistance. So can you address that? I can. Two points to that. The first is Officer Price has him down on the ground for a couple minutes, and he's trying to re-handcuff him. Mr. Lorry testifies that he is not giving him his hands. He refuses to cooperate. Whether or not he's kicking back, no, you're absolutely right. Video doesn't show that. Mr. Lorry didn't testify to that. He is not assaulting Officer Price on the ground, but he is moving in such a way and refusing commands in such a way that Officer Price undisputably cannot get him re-handcuffed. In fact, it is not until Officer Rodriguez comes over and applies what you've referred to as, you know, an increased level of force, and that is he uses his body weight on the upper part of Mr. Lorry's body. He testifies at the top of his back. Lorry testifies it's on the base of his skull. Either way, it's that use of force that actually then allows Officer Price to get Mr. Lorry secondhand into a handcuff. And, again, that is shown on the video, that he cannot get him handcuffed. But it is important that we consider Mr. Lorry's deposition testimony because he admits, he says, you know, the boot comes over and he can see a boot and there's force being applied to his head and he's not sure what's going on back there, but that at that point, it was only at that point, that he was able to get him re-handcuffed. They then assist him up. I mean, they don't leave him down there once he's restrained and start kicking him or hitting him. They assist him up, and they put him back down on the bench, and they continue through the booking process. So it's not to misconstrue your argument here. Are you suggesting that if the officer suspects the suspect is under the influence of alcohol or drugs, that the level of force can, and there's a justification for using additional or greater level of force as a result of that? No. No, that is not my position. My position is that it is one of the factors that can go into the reasonably objective analysis of whether the officer reasonably understood that an assault was imminent, that just like verbal threats, maybe an arrestee will make good on verbal threats and maybe he won't, but that the officer can take account of the fact that one is under the influence of alcohol or drugs as an additional indicator of whether or not that is likely to occur. And so with the threats made here, the tossing then of the jacket at his head or the flinging of the jacket at his head, that taken into account with the use of or suspected use of drugs, that all of those things taken together then objectively reasonably led the officer to believe that an assault was imminent, and that is what the trial court held. And so I see my time has expired. I would just submit that given both the video and the plaintiff's admissions, that that's the distinction here. We ask that summary judgment be affirmed. All right. Thank you. And I'll give you a rebuttal. Thank you. I'll be very brief here. This concern of alcohol and ecstasy, there's no evidence that Mr. Lowery was drunk. There's no evidence that Mr. Lowery was high on ecstasy, molly, whatever you want to call it. There is evidence, though, that the passenger of the vehicle was. There's no dispute that. But there's no evidence showing that he was acting erratically because of alcohol. There's no evidence to show that he was acting erratically because he was on some sort of drug. So I think that argument doesn't hold much weight. And that kind of goes into my next point, which is this. We keep on hearing that he's not being compliant, he's not being compliant. But every time he's told to do something, he behaves. Stop talking, he'll stop talking. He'll start up again, but he'll stop talking. You know, sit down on the bench, sits down on the bench, hand me your coat, tosses him the coat. But here's where it's also important in that video. When he tosses him that coat and he's in fear that an assault is imminent, watch that video closely. Mr. Lowery is taking a seat. If you watch it very closely, he tosses him the coat and he goes down. I don't want to say fetal position, but he's retreating. He's going back to the seat where he's supposed to be. So with that being said, I believe the video as well as the deposition testimony, I think that's all for a jury to determine the reasonableness of Officer Price's, Rodriguez's, actions in this case. Because it's not that he can't use force, it's got to be reasonable given the circumstances. And here it was unreasonable force. Thank you. All right. Thank you. Case is submitted. And you may call the next case.